UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

ZUCHAER & ZUCHAER CONSULTING LLC,

                              Plaintiff,

          -against-

PROJECT VERTE INC.,

                      Defendant.

------------------------------------------

PROJECT VERTE, INC.,

                    Counterclaim-Plaintiff,

         -against-

ZUCHAER & ZUCHAER CONSULTING, LLC, MOSHE
ZUCHAER, JOSSEF KAHLON, and TNJ HOLDINGS,
INC.,

                  Counterclaim-Defendants.

------------------------------------------

20-cv-08703-VM

**ANSWER WITH
AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS**

Defendant and Counterclaim-Plaintiff Project Verte, Inc. ("Project Verte"), by its

attorneys Simon▪Lesser PC, as and for its Answer with Affirmative Defenses and Counterclaims

to plaintiff Zuchaer & Zuchaer Consulting, LLC's ("Z&Z LLC") Complaint dated October 19,

2020 ("Complaint"), respectfully alleges as follows:

**SUBJECT MATTER JURISDICTION AND VENUE**

      1.     The allegations in Paragraph 1 of the Complaint assert legal conclusions to which

no response is required. However, Project Verte does not contest this Court's jurisdiction.

      2.     The allegations in Paragraph 2 of the Complaint assert legal conclusions to which

no response is required. However, Project Verte does not contest venue in this Court.

3.     The allegations in Paragraph 3 of the Complaint assert legal conclusions to which no response is required.  Project Verte refers the Court to the Promissory Note, which speaks for itself.  Project Verte does not contest this Court's jurisdiction.

## PARTIES AND PERSONAL JURISDICTION

4.     Project Verte denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.     Project Verte denies the allegations contained in Paragraph 5 of the Complaint, except admits that Project Verte is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia.

6.     The allegations in Paragraph 6 of the Complaint assert legal conclusions to which no response is required. However, Project Verte does not contest this Court's jurisdiction.

## GENERAL ALLEGATIONS

7.     In response to the allegations in Paragraph 7, and as further described in its Counterclaims herein, Project Verte states that the alleged purchase of Z&Z LLC's membership interest in Flowerdale LLC ("Flowerdale") was conditioned on an "Assignment of Membership Interest in Flowerdale LLC," signed by Moshe Zuchaer ("Zuchaer"), a copy of which is attached hereto as Exhibit A, wherein Z&Z LLC represented, warranted and covenanted, *inter alia*, that Z&Z LLC is the fee owner of three tracts of real property in Dallas, Texas, including the property located at 3450 E. Ledbetter Drive, when, in fact, Flowerdale did not own such property.  Z&Z LLC further represented, warranted and covenanted that it "is the sole legal and beneficial owner[] of the [Flowerdale] interests" purportedly assigned by Z&Z LLC, had "good

title to [them]" and "full power and authority to transfer [them]" and "consummate the transactions contemplated hereby."  Those representations were also false as Z&Z LLC did not have the right to assign and transfer the Flowerdale interests that served as the consideration for the Promissory Note.  Z&Z LLC's material misrepresentation rendered the purported "Assignment of Membership Interest in Flowerdale LLC" and the associated Promissory Note, unenforceable and void *ab initio*.

8.      In response to the allegations in Paragraph 8, and as further described in its Counterclaims herein, Project Verte states that the Promissory Note which Z&Z LLC alleges served "as consideration for the Flowerdale LLC membership interest," was premised on Z&Z LLC's materially false representations as to its ownership of the land described in the "Assignment of Membership Interest in Flowerdale LLC," and its power and authority to transfer the Flowerdale interests, which material misrepresentations rendered the Promissory Note unenforceable and void *ab initio*.

9.      In response to the allegations in Paragraph 9, and as further described in its Counterclaims herein, Project Verte states that the Promissory Note which Z&Z LLC alleges served "as consideration for the Flowerdale LLC membership interest," was premised on Z&Z LLC's materially false representation as to its ownership of the land described in the "Assignment of Membership Interest in Flowerdale LLC," and its power and authority to transfer the Flowerdale interests, which material misrepresentations rendered the Promissory Note unenforceable and void *ab initio*.

10.     In response to the allegations in Paragraph 10, Project Verte states that the extension request was made before Project Verte discovered that Z&Z LLC's representations regarding its ownership of the land identified in the "Assignment of Membership Interest in Flowerdale LLC" and its power and authority to transfer the Flowerdale interests, were materially false.

11.     In response to the allegations in Paragraph 11, Project Verte states that the "letter agreement" attached as Exhibit B to the Complaint was executed before Project Verte discovered that Z&Z LLC's representations regarding its ownership of the land identified in the "Assignment of Membership Interest in Flowerdale LLC," and its power and authority to transfer the Flowerdale interests, were materially false, and which material misrepresentations also rendered the "letter agreement" unenforceable and void *ab initio*.

12.     Project Verte denies the allegations in Paragraph 12, and states that the Promissory Note is invalid and unenforceable based upon the materially false representations made by Z&Z LLC and its principal Zuchaer regarding Flowerdale's ownership of the property identified in the "Assignment of Membership Interest in Flowerdale LLC" and its power and authority to transfer the Flowerdale interests, which, as Z&Z LLC alleges, served as the putative consideration for the Promissory Note.

13.     Project Verte denies the allegations in Paragraph 13.

14.     Project Verte denies the allegations in Paragraph 14.

15.     Project Verte denies the allegations in Paragraph 15, and states that the Promissory Note is invalid and unenforceable based upon the materially false representations

4

made by Z&Z LLC and its principal Zuchaer regarding Flowerdale's ownership of the property identified in the "Assignment of Membership Interest in Flowerdale LLC" and its power and authority to transfer the Flowerdale interests, which, as Z&Z LLC alleges, served as the putative consideration for the Promissory Note.

16.      Project Verte admits that it has made no payment on the Promissory Note which is invalid and unenforceable based upon the materially false representations made by Z&Z LLC and its principal Zuchaer regarding Flowerdale's ownership of the property identified in the "Assignment of Membership Interest in Flowerdale LLC" and its power and authority to transfer the Flowerdale interests, which, as Z&Z LLC alleges, served as the putative consideration for the Promissory Note.

17.      In response to Paragraph 17, Project Verte refers the Court to the Promissory Note, which speaks for itself.

18.      In response to Paragraph 18, Project Verte refers the Court to the Promissory Note, which speaks for itself.

## COUNT I

## CLAIM FOR RELIEF – BREACH OF PROMISSORY NOTE

19.      Project Verte repeats, reiterates, and re-alleges each and every response to the allegations in Paragraphs 1 through 18 of the Complaint.

20.      Project Verte denies the allegations in Paragraph 20 as the Promissory Note is void *ab initio*, and Project Verte has no duty to perform thereunder.

21.      Project Verte denies the allegations contained in Paragraph 21.

5

22.    Project Verte denies the allegations contained in Paragraph 22.

23.    Project Verte denies the allegations contained in Paragraph 23.

WHEREFORE**,** Project Verte denies liability to Z&Z LLC in any manner or sum whatsoever.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

24.    The Complaint fails to state a legitimate cause of action upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

25.    Plaintiff's claim is barred because the Promissory Note is predicated on Plaintiff's material misrepresentations and omissions and is void *ab initio*.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

26.    Plaintiff's claim is barred because of its material misrepresentations and failure to fulfill the conditions precedent to Project Verte's performance.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

27.    Plaintiff's claim is barred by its material misrepresentations and unclean hands.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

28.    Plaintiff is estopped from seeking enforcement of the Promissory Note based on its material misrepresentations and omissions.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

29.    Plaintiff's claim is barred or limited, in whole or in part, by the doctrine of mistake.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

30.    Plaintiff has not suffered any cognizable injury.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

31.    Plaintiff has not sustained any compensable damages for which Project Verte may

be liable.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

32.    Plaintiff does not have any contractual or other basis for recovering compensatory

damages, interest, costs or any other relief against Project Verte.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

33.    Plaintiff's claim is barred because of the failure to join necessary and

indispensable parties.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

34.    Project Verte reserves the right to assert additional defenses and/or the right to

supplement and amend its Answer and/or its Affirmative Defenses based upon information

learned or developed during discovery or investigation in connection with this action.

WHEREFORE, Project Verte demands judgment in its favor dismissing the Complaint,

with prejudice, with costs, disbursements and expenses and reasonable attorneys' fees incurred,

and for such other and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

Project Verte, as and for its Counterclaims against Z&Z LLC, and additional Counterclaim-Defendants Moshe Zuchaer ("Zuchaer"), Jossef Kahlon ("Kahlon"), and TNJ Holdings, Inc. ("TNJ"), alleges as follows:

## NATURE OF THE COUNTERCLAIMS

1.      Project Verte brings these Counterclaims to remedy a fraud committed by Z&Z LLC, its principal and owner Zuchaer, as well as Kahlon on behalf of himself and his company, TNJ.  In 2017, Kahlon, Jane Gol ("Gol"), and Amir Chaluts ("Chaluts") agreed to start a business offering technology and fulfillment solutions for retail and ecommerce businesses. Gol and Chaluts were looking to invest in warehouses after identifying trends in ecommerce. Kahlon claimed that he owned property in Dallas, Texas valued at $14 million consisting of three parcels that he would contribute to the venture, which could be developed with a 2-million square foot warehouse and could serve as a flagship for the logistics and technology venture.

2.      As it turned out, very little about what Kahlon promised was true: the land was worth only $900,000, not $14 million, as Kahlon represented; he did not own the land – a different entity (Flowerdale) allegedly did; that entity did not even own all of the land it purported to own – Kahlon's entity, TJ Management Group, LLC, owned one parcel that was supposed to have been conveyed; and, Z&Z LLC (which owned 100% of the membership interest in Flowerdale) did not have the right to convey the other two parcels because they could not be transferred without prior written consent of a third party, Avraham (Avi) Yehuda, which it did not obtain.  Put simply, the fundamental purpose of the land transfer failed completely.

8

3.      None of this was known to Project Verte.  As a result, Project Verte was fraudulently induced into: (1) purchasing from Z&Z LLC the membership interest in Flowerdale that supposedly owned the three parcels for $4 million in exchange for the Promissory Note, (2) crediting Kahlon through TNJ, with purportedly having made a $8 million loan to Project Verte; and (3) expending significant financial resources to rezone the land and make use of it for Project Verte's business.

4.      As a result of the Counterclaim Defendants' material misrepresentations and misconduct, the Court should unwind the transactions by rescinding those transactions that were part of, or dependent upon, the fraudulent misrepresentations and misconduct, including the Flowerdale Assignment, the associated Promissory Note, and the TNJ credit, or alternatively, awarding Project Verte compensatory, recessionary and punitive damages.

## COUNTERCLAIM PARTIES

5.      Project Verte is a Delaware corporation with its principal place of business in Atlanta, Georgia, formed on December 11, 2017. The initial stockholders of Project Verte were Gol, Chaluts and various entities affiliated with them (collectively referred to as the "AJ Group"), and TNJ, which was purported to be owned by Kahlon's son, Julian Kahlon.  In early 2020, Julian Kahlon informed Gol and Chaluts that he had transferred his 100% ownership of TNJ to his father, Kahlon, and Kahlon took his son Julian's seat on the board of Project Verte.

6.      Counterclaim Defendant Kahlon has residences in the State of New York and the State of Florida.  In September 2016, the Securities and Exchange Commission (the "SEC") obtained an Order against Kahlon requiring him, among other things, to disgorge over $7.7

9

million in gross trading revenue plus prejudgment interest, and implementing a lifetime bar against Kahlon from trading penny stocks, affirmed on appeal. *S.E.C. v. Kahlon*, 873 F.3d 500 (5th Cir. 2017).

7.    Counterclaim Defendant TNJ is a New York corporation formed by Kahlon on or about June 13, 2018 to hold Kahlon's interest in Project Verte, either jointly or separately at various times. Kahlon also owns non-party TJ Management Group, LLC ("TJ Management"), a New York limited liability company.

8.    Counterclaim Defendant Zuchaer is a Florida resident and owner of defendant Z&Z LLC, a Florida limited liability company formed on April 14, 2009. Z&Z LLC is owned by Zuchaer, and according to public filings with the State of Florida, Zuchaer and Haim Revivo are the managers.

9.    According to the Complaint, Counterclaim Defendant Z&Z LLC alleges that it is a Florida limited liability company, located in Pompano Beach, Florida.

10.   Upon information and belief, Zuchaer is the sole member of Z&Z LLC, and as such, invoked this Court's jurisdiction when he, on behalf of Z&Z LLC, commenced this action in this Court.

11.   Upon information and belief, Zuchaer is also the registered agent, President and owner of Zuchaer & Zuchaer Consulting, Inc. ("Z&Z Inc."), a Florida corporation formed on April 10, 2008.

12.     Certain other persons and entities are relevant to the allegations of these Counterclaims. Non-party Monique Law is the spouse of Zuchaer and President and registered agent of GPS Credit Report LLC ("GPS Credit").

13.     Non-party Avi Yehuda ("Yehuda") is an Israeli citizen.  Upon information and belief, pursuant to a Control Agreement dated March 20, 2009, between Yehuda and Z&Z Inc. (the "Control Agreement"), Yehuda received 33% of all series of equity shares of Z&Z Inc. In addition, Z&Z Inc. agreed that it "must receive the express written approval and consent of Yehuda before making any sale, transfer, change or disposition of, or taking any other action that would affect in any way, the assets of [Z&Z Inc.]."

## JURISDICTION

14.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, and pursuant to 28 U.S.C. § 1367(a) as Project Verte's Counterclaims are so related to Z&Z LLC's claim in this action that they form part of the same case or controversy.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

11

## **BACKGROUND**

16.    Beginning in 2017, Chaluts and Kahlon discussed how they might work together. In general, the parties discussed how they might be able to combine the land Kahlon claimed he owned in Dallas, Texas with the business experience of Chaluts and Gol and their interest in investing in warehouses for ecommerce.

17.    After several conversations throughout 2017, the parties agreed to form a company, which ultimately became Project Verte. The rough outline of the eventual agreement was that Kahlon would contribute "his" land in Texas, which required rezoning for industrial use, to construct a warehousing and logistics center. Gol and Chaluts would contribute their business expertise, and the parties would fund the company as necessary on a *pro rata* basis.

18.    The negotiations on the form of the entity lasted from August 2017 until December 11, 2017 when the parties formed Project Verte Inc. (initially known as Vert Enterprises, Inc.) in Delaware.

19.    Although the parties formed Project Verte at that time (December 11, 2017), the negotiation of all of the agreements, such as the shareholder agreement, took many months beyond that before they were finalized. The parties formed Project Verte at this time, however, because they had been informally operating as a group and wanted to have at least some entity through which to fund and initially operate their business while they negotiated the other numerous details.

12

20.    The parties' negotiations concluded in August 2018 with the execution of several documents at or about the same time, including the Assignment of Membership Interests in Flowerdale LLC (the "Flowerdale Assignment")(Exhibit A hereto).

21.    Prior to the execution of the Flowerdale Assignment, Kahlon, on behalf of himself and TNJ, made multiple representations to Project Verte's principals, including Gol and Chaluts, that he, and entities he owned and/or controlled, owned the Texas property that is identified in the Flowerdale Assignment (the "Texas Property") or otherwise had the ability to cause the Texas Property to be sold and transferred to Project Verte on terms he dictated.

22.    Kahlon also had his agents make representations regarding Kahlon's ownership and control over the Texas Property.  For example, on August 11, 2017, Kahlon had his agent, Lonnie Ruffo, transmit correspondence from New York with the subject line "Texas Land Summary," attaching survey maps of the Texas Property Kahlon represented he owned and/or controlled, including the three tracts that made up the Texas Property, which included 3450 E. Ledbetter Dr. in Dallas, Texas, that was identified and referenced in the survey map as "Tract 3."

23.    Kahlon later identified the actual owner of the Texas Property as Flowerdale, LLC ("Flowerdale"), an entity controlled by himself and his business colleague, Zuchaer, through Zuchaer's entity Z&Z LLC, and that he would arrange for Zuchaer and Z&Z LLC to assign its ownership in Flowerdale to Project Verte, which would thereby grant ownership of the Texas Property, inclusive of the three separate tracts confirmed by Ruffo in his August 11, 2017 correspondence, to Project Verte.

24.    The Flowerdale Assignment was executed by Zuchaer on behalf of Z&Z, LLC, pursuant to which the entirety of Flowerdale's claimed ownership in the entirety of the Texas Property were to be assigned to Project Verte and which was to serve as consideration for the Promissory Note.

25.    The recitals to the Flowerdale Assignment expressly confirm the representation made by Zuchaer on behalf of Z&Z LLC that Flowerdale:

> is a single purpose entity and is the fee owner of the land in Dallas, Texas known by the approximate addresses 3200 Stag Rd – Tract B (referenced as tract 1 and 2 on the survey attached hereto as Exhibit B) and 3450 E. Ledbetter Dr. – Tract 2 (referenced as tract 3 on the survey), both in Dallas, Texas (collectively, the "Property") and is the owner of no other assets.

26.    Z&Z LLC and Zuchaer further represented, warranted and covenanted in the Flowerdale Assignment that Z&Z LLC "is the sole legal and beneficial owner[] of the [Flowerdale] interests" purportedly assigned by Z&Z LLC, had "good title to [them]" and "full power and authority to transfer [them]" and "consummate the transactions contemplated hereby."

27.    Pursuant to the Flowerdale Assignment, Z&Z LLC purported to transfer all of the membership interests of Flowerdale, the claimed owner of the entirety of the Texas Property, to Project Verte.  In return for the transfer of membership interests in Flowerdale, Project Verte agreed to give Z&Z LLC the Promissory Note in the principal amount of $4,000,000 in favor of Z&Z, LLC, which is attached as Exhibit A to Z&Z LLC's Complaint.

28.    Although the Promissory Note was in the amount of $4 million, Kahlon, who had originally represented that he owned the entirety of the Texas Property, represented that the actual value of the Texas Property was in excess of $14 million.

29.     Accordingly, in consideration for his causing Flowerdale (and therefore the Texas Property) to be assigned to Project Verte, Kahlon negotiated for, and TNJ was granted, a $10 million credit from Project Verte in the form of a note.  Kahlon later suggested that TNJ be given an $8 million credit for the land, and the AJ Group be given a $2 million credit for the Texas Property on Project Verte's books and records, which is how the transaction was originally recorded.

30.     The AJ Group, however, did not understand why they would get any credit arising from the transfer of the Texas Property.  Accordingly, when the Company reset its ownership structure through a share forfeiture agreement, the AJ Group looked to divest of any purported "credit" due to transfer of the Texas Property and moved that credit to TNJ.

31.     Gol and Chaluts had negotiated their relationship with Kahlon, and Kahlon ultimately controlled TNJ, put his son in nominal "charge" of TNJ as the owner of TNJ and as a director of Project Verte.  Kahlon explained to Gol and Chaluts that he did this because of his problems with the SEC, and his position that it was not wise for him to be the public face of the company.

32.     Accordingly, because Kahlon's son was in charge of Project Verte's executive function, Project Verte could not immediately discover the truth about Kahlon and Zuchaer's misrepresentations and misconduct.

### The Truth Comes Out

33.     After the closing of the transactions, Project Verte began to discover multiple issues with the Texas Property.  Because Kahlon had not funded Project Verte as agreed and

15

because the company needed funding to pay rent, employee salaries and the ongoing expenses of the business, in Fall 2019, Project Verte sought to obtain a bank loan to be secured by, among other things, the Texas Property.  As part of the lender's due diligence prior to issuing the loan, the lender had an independent appraisal performed by Cushman & Wakefield – one of the world's largest commercial real estate service firms – which concluded that the Texas Property was only worth $900,000.

34.    It was also discovered that Flowerdale did not own all three tracts of the Texas Property, as Kahlon, Z&Z LLC and Zuchaer represented.  It was discovered that Flowerdale had not owned the portion of the Texas Property referenced as Tract 3 on the survey ("Tract 3") since 2007.

35.    Once the bank's due diligence information revealed that Flowerdale did not own Tract 3, a special committee of Project Verte's Board of Directors was formed and commenced an investigation into the Texas Property.  During this investigation, the special committee discovered the history of transfers of Tract 3 back and forth between TJ Management and GPS Credit.

36.    Tract 3 was first transferred by Flowerdale pursuant to a deed dated September 10, 2007 (the "2007 Deed"). Ted Flomenhaft ("Flomenhaft") executed the deed on behalf of Capital TT, LLC as the sole member of Flowerdale.  Flomenhaft is believed to be an associate of Kahlon. The transferee of Tract 3 was TJ Management.  Kahlon signed the 2007 Deed on behalf of TJ Management.

37.    On September 9, 2016, TJ Management transferred Tract 3 to GPS Credit by deed in exchange for ten (10) dollars (the "2016 Deed").  GPS Credit is purportedly owned by Monique Law, Zuchaer's spouse.  On the 2016 Deed, GPS Credit listed its address as 2414 NW 87 Place, Doral, Florida. That address is the same address listed on the public filings of Z&Z Inc. and Z&Z LLC.  This transfer occurred while the court in the SEC action against Kahlon had taken under advisement the SEC's motion for sanctions against Kahlon.

38.    On September 30, 2016, the court in the SEC action issued its opinion granting the SEC's request for, among other things, a permanent penny stock ban and disgorgement in the amount of $7,758,178 against Kahlon.

39.    On January 18, 2017, just a few months after the court granted the SEC's requested penalty against Kahlon, GPS Credit transferred Tract 3 back to Kahlon's entity, TJ Management, by deed (the "2017 Deed") for ten (10) dollars.  Monique Law signed the 2017 Deed on behalf of GPS Credit. The same attorney prepared the 2016 Deed and the 2017 Deed.

40.    Meanwhile, the remainder of the Texas Property (i.e., Tracts 1 and 2 identified in the Survey) continued to be owned by Flowerdale, which was controlled by Kahlon and Zuchaer, and/or their affiliates.

41.    The 2006 Annual Report filed by Flowerdale with the Texas Secretary of State on August 1, 2007, was signed by Flomenhaft as President, and Capital TT, LLC was listed as the registered agent.  On November 5, 2009, Flowerdale filed a Statement of Change of Registered Office/Agent with the Texas Secretary of State. Z&Z Inc. replaced Capital TT, LLC as the

registered agent of Flowerdale, but Z&Z Inc. and Capital TT, LLC were listed as having the same address.

42.    On November 25, 2009, Flowerdale filed Articles of Amendment with the Texas Secretary of State indicating that Zuchaer was replacing Flomenhaft as President of Flowerdale. Upon information and belief, Z&Z Inc. acquired all of the interests in Flowerdale.

43.    Project Verte also discovered that the Counterclaim Defendants falsely represented and warranted that Z&Z LLC had the right to enter into the Flowerdale Assignment in the first place.

44.    On April 23, 2020, Project Verte received notice from Yehuda making clear that "[Z&Z LLC] did not have the right to sell Flowerdale to Project Verte."

45.    Yehuda's April 23, 2020 notice to Project Verte further stated that:

Flowerdale was committed by Moshe Zuchaer to Zuchaer & Zuchaer Consulting, Inc. ("Zuchaer Inc."), a corporation in which Mr. Yehuda has a one-third ownership and 50% voting interest.  At no time did Mr. Yehuda consent or authorize any transfer of Zuchaer Inc.'s Flowerdale shares to [Z&Z LLC] or to any other person or entity.

46.    Yehuda's April 23, 2020 notice to Project Verte further confirmed that Flowerdale did not own Tract 3 of the Texas Property as Z&Z LLC and Zuchaer falsely represented in the Flowerdale Assignment, and as Kahlon had represented before the Flowerdale Assignment was presented to Project Verte.

47.    Yehuda's April 23, 2020 notice to Project Vert also confirmed that Tract 3 "is owned by TJ Management Group, LLC, a company in which Mr. Yehuda has a fifty percent membership interest" and that Yehuda never consented to the conveyance of that property.

18

## The Zoning of the Texas Property

48.     Kahlon represented to the AJ Group that the Texas Property was worth $7 million in 2018, but would be worth over $14 million once the pending rezoning application was approved. Zuchaer caused the rezoning application to be filed seeking to permit construction of a warehouse.

49.     On December 13, 2018, the Dallas City Plan Commission denied the poorly drafted rezoning request.  In the denial, the City Plan Commission noted that the application for rezoning to permit construction of a warehouse did not comply with four separate land use goals and policies of the Dallas comprehensive development plan. In addition, the denial noted that the application raised five "items of concern" that did not appear to be solvable. For these and other reasons, the City Plan Commission concluded that

> the requested LI District will ultimately permit development of incompatible uses and development standards, and will potentially possess negative operational characteristics that would not be appropriate in close proximity to these residential uses, thus negatively affecting residential quality of life.

50.     As a result of the denial, the Texas Property has limited value nowhere near the values represented by the Counterclaim Defendants.  Indeed, an independent appraisal of the Texas Property by Cushman & Wakefield in November 2019 valued the Texas Property at approximately $900,000 as zoned, and if re-zoned for industrial use which would be very difficult to achieve, would be worth only around $6,000,000, however, there would be significant flood plain and tree mitigation costs to accomplish this re-zoning.

51.     Kahlon, who had owned or otherwise had an interest in the Texas Properties for over a decade, knew that the Texas Property was not worth the value he represented it to be, and

also knew it would never be worth the $14 million he claimed it would be upon zoning approval. Kahlon made these false representations, and inflated the actual value of the Texas Property, in order to induce Project Verte to enter into the Flowerdale Assignment and corresponding Promissory Note.

## FIRST COUNTERCLAIM
[Fraud – Rescission]

52.     Project Verte repeats and realleges the allegations above as if fully set forth herein.

53.     Kahlon and TNJ made material misrepresentations to Project Verte's principals, Gol and Chaluts, to induce them to form Project Verte with him and credit TNJ with an interest in Project Verte.

54.     Kahlon and TNJ made material misrepresentations to Project Verte's principals, Gol and Chaluts, that Kahlon owned and/or controlled the Texas Property, and would have the Texas Property transferred to Project Verte.

55.     Kahlon and TNJ made material misrepresentations to Project Verte's principals, Gol and Chaluts when Kahlon and TNJ represented that they would cause the membership interests in Flowerdale – which they represented owned the Texas Property – to be transferred to Project Verte.  In fact, Kahlon and TNJ knew that Flowerdale did not own the Texas Property described in the Flowerdale Assignment.

56.     Following the closing of the transaction, Kahlon continued to hide that Flowerdale did not own the entirety of the Texas Property and has never transferred it to Project

20

Verte.  On information and belief, Kahlon cannot do so because Yehuda owns 50% of TNJ Management and has not, and will not, consent to the transfer Tract 3.

57.    Zuchaer and Z&Z LLC made material misrepresentations to Project Verte in the Flowerdale Assignment when they represented that they had the power and authority to enter into the Flowerdale Assignment; that Z&Z LLC owned the three tracts of Texas Property identified in the Flowerdale Assignment, which attached and incorporated by reference, the survey included in the communications from Kahlon and his agents, that expressly identified the three (3) separate Tracts of Texas Property that Flowerdale allegedly owned; and that the transfer of Flowerdale's allegedly unencumbered ownership of those three separate Tracts would be transferred to Project Verte, and which transfer would serve as the consideration for the Promissory Note.

58.    Kahlon and TNJ further misrepresented to Project Verte's principals Gol and Chaluts that the Texas Property, which included the subject three (3) Tracts, was at the time worth $7 million and would be worth $14 million once a rezoning application was granted, which they also represented was likely to happen, which they knew at the time to be false.  In fact, the rezoning application had little chance of success and ultimately failed, and the Texas Property was only worth $900,000.

59.    Kahlon, TNJ, Zuchaer and Z&Z LLC also deliberately failed to disclose that the membership interests in Flowerdale were subject to Yehuda's consent rights, and that Z&Z LLC did not have the ability to transfer the Flowerdale interests in the portions of the Texas Property that it did own.

21

60.     Kahlon, Z&Z LLC and Zuchaer specifically represented to Project Verte in the negotiations leading up to the Flowerdale Assignment, and, with regard to Z&Z LLC and Zuchaer, in the Flowerdale Assignment itself, that Z&Z LLC had a good and unencumbered title to the membership interests in Flowerdale, that Flowerdale owned the Texas Property, and had "full power and authority to transfer and assign" the membership interests and had "taken all actions necessary to execute and deliver this Assignment and to fulfill its obligations hereunder and to consummate the transactions contemplated hereby."

61.     In fact, Z&Z LLC did not have the authority, without Yehuda's consent which was not obtained, to transfer the interests in Flowerdale, and, upon information and belief, deliberately failed to disclose the transfer to Yehuda, and set up Z&Z LLC to avoid suspicion and to further deceive Yehuda.  Zuchaer continued the deception as late as November 2017, long after Kahlon had represented to Gol and Chaluts that Kahlon owned the Texas Property, when Zuchaer attempted to bill Yehuda for expenses associated with the Texas Property.  Yehuda, apparently believing that Z&Z Inc. still indirectly owned the Texas Property through Flowerdale, refused to pay these expenses, citing Section 2.4 of the Control Agreement.

62.     Project Verte justifiably relied on the Counterclaim Defendants' material misrepresentations in entering into the subject transactions.

63.     But for the Counterclaim Defendants' fraudulent misrepresentations and material omissions, Project Verte would not have entered into the Flowerdale Assignment and corresponding Promissory Note, would not have credited TNJ with $10,000,000 on its books and would not have expended significant financial resources trying to rezone the Texas Property.

22

64.    The Counterclaim Defendants' fraudulent misrepresentations and material omissions go to the very heart of the transactions and purpose.

65.    As a result of the Counterclaim Defendants' fraud, Project Verte seeks rescission of the Flowerdale Assignment, and the agreements that rely on consummation of the transactions in the Flowerdale Assignment, including, without limitation:

    a.    The Promissory Note for $4 million payable to Z&Z LLC by Project Verte;

    b.    The $10 million "credit" given to Kahlon and/or TNJ on a Credit Line Promissory Note and the Share Forfeiture and Note Transfer Agreement for causing the Texas Property to be transferred to Project Verte at less than full value; and

    c.    All credits Kahlon claimed for TNJ in connection with engineering costs incurred in connection with the Texas Property.

66.    Project Verte is also entitled to be reimbursed for the expenses it incurred in connection with the Texas Property from the date of consummation of the Flowerdale Assignment until rescission of the transactions.

67.    Project Verte's claim for rescission has been timely asserted.  Shortly after its receipt of Yehuda's April 23, 2020 notice, Project Verte commenced legal action against the Counterclaim Defendants in Delaware Chancery Court for the relief requested herein.  Following the Counterclaim Defendants' challenge to that court's personal jurisdiction over the Counterclaim Defendants, Z&Z LLC commenced the within action, and Project Verte now restates its claims against the Counterclaim Defendants, including its claims for recission.

23

## SECOND COUNTERCLAIM
[Fraud - Damages]

68.     Project Verte repeats and realleges the allegations above as if fully set forth herein.

69.     In the alternative to rescission, Project Verte is entitled to compensatory and recessionary damages to put the parties in the position they would have been had the Flowerdale Assignment never been consummated.

70.     Kahlon and TNJ made material misrepresentations to Project Verte's principals, Gol and Chaluts, to induce them to form Project Verte with him and credit TNJ with an interest in Project Verte.

71.     Kahlon and TNJ made material misrepresentations to Project Verte's principals, Gol and Chaluts, that Kahlon owned and/or controlled the Texas Property, and would have the Texas Property transferred to Project Verte.

72.     Kahlon and TNJ made material misrepresentations to Project Verte's principals, Gol and Chaluts when Kahlon and TNJ represented that they would cause the membership interests in Flowerdale – which they represented owned the Texas Property – to be transferred to Project Verte.  In fact, Kahlon and TNJ knew that Flowerdale did not own the Texas Property described in the Flowerdale Assignment.

73.     Following the closing of the transaction, Kahlon continued to hide that Flowerdale did not own the entirety of the Texas Property and has never transferred it to Project Verte.  On information and belief, Kahlon cannot do so because Yehuda owns 50% of TNJ Management and has not, and will not, consent to the transfer Tract 3.

24

74.     Zuchaer and Z&Z LLC made material misrepresentations to Project Verte in the Flowerdale Assignment when they represented that they had the power and authority to enter into the Flowerdale Assignment; that Z&Z LLC owned the three tracts of Texas Property identified in the Flowerdale Assignment, which attached and incorporated by reference, the survey included in the communications from Kahlon and his agents, that expressly identified the three (3) separate Tracts of Texas Property that Flowerdale allegedly owned; and that the transfer of Flowerdale's allegedly unencumbered ownership of those three separate Tracts would be transferred to Project Verte, and which transfer would serve as the consideration for the Promissory Note.

75.     Kahlon and TNJ further misrepresented to Project Verte's principals Gol and Chaluts that the Texas Property, which included the subject three (3) Tracts, was at the time worth $9 million and would be worth $14 million once a rezoning application was granted, which they also represented was likely to happen, which they knew at the time to be false.  In fact, the rezoning application had little chance of success and ultimately failed, and the Texas Property was only worth $900,000.

76.     Kahlon, TNJ, Zuchaer and Z&Z LLC also deliberately failed to disclose that the membership interests in Flowerdale were subject to Yehuda's consent rights, and that Z&Z LLC did not have the ability to transfer the Flowerdale interests in the portions of the Texas Property that it did own.

77.     Kahlon, Z&Z LLC and Zuchaer specifically represented to Project Verte in the negotiations leading up to the Flowerdale Assignment, and, with regard to Z&Z LLC and

Zuchaer, in the Flowerdale Assignment itself, that Z&Z LLC had a good and unencumbered title to the membership interests in Flowerdale, that Flowerdale owned the Texas Property, and had "full power and authority to transfer and assign" the membership interests and had "taken all actions necessary to execute and deliver this Assignment and to fulfill its obligations hereunder and to consummate the transactions contemplated hereby."

78.    In fact, Z&Z LLC did not have the authority, without Yehuda's consent which was not obtained, to transfer the interests in Flowerdale, and, upon information and belief, deliberately failed to disclose the transfer to Yehuda, and set up Z&Z LLC to avoid suspicion and to further deceive Yehuda.  Zuchaer continued the deception as late as November 2017, long after Kahlon had represented to Gol and Chaluts that Kahlon owned the Texas Property, when Zuchaer attempted to bill Yehuda for expenses associated with the Texas Property.  Yehuda, apparently believing that Z&Z Inc. still indirectly owned the Texas Property through Flowerdale, refused to pay these expenses, citing Section 2.4 of the Control Agreement.

79.    Project Verte justifiably relied on the Counterclaim Defendants' material misrepresentations in entering into the subject transactions.

80.    But for the Counterclaim Defendants' fraudulent misrepresentations and material omissions, Project Verte would not have entered into the Flowerdale Assignment and corresponding Promissory Note, would not have credited TNJ with $10,000,000 on its books and would not have expended significant financial resources trying to rezone the Texas Property.

81.    Project Verte justifiably relied on the Counterclaim Defendants' material misrepresentations in entering into the subject transactions.

26

82.     Project Verte is entitled to compensatory and rescissory damages, which include, but are not limited to, the difference in price between what the Counterclaim Defendants represented the Texas Property was worth based on, among other things, the representation of Kahlon and other representatives of TNJ to Project Verte regarding the potential income from the as-completed warehouse on the Texas Property and the amount actually paid by Project Verte for the Texas Property.

83.     Project Verte was damaged in an amount no less than $10,000,000, the exact amount to be proven at trial, and also seeks an award of punitive damages in at least an equal amount.

## THIRD COUNTERCLAIM
[Breach of Contract – Flowerdale Assignment]

84.     Project Verte repeats and realleges each and every preceding paragraph as if fully set forth herein.

85.     In the Flowerdale Assignment, Z&Z LLC and Zuchaer represented and warranted that Flowerdale owned all three tracts of the Texas Property.

86.     In Section 3(b) of the Flowerdale Assignment, Z&Z LLC and Zuchaer also represented, warranted and covenanted that Z&Z LLC "is the sole legal and beneficial owner[] of the [Flowerdale] interests" purportedly assigned by Z&Z LLC, had "good title to [them]" and "full power and authority to transfer [them]" and "consummate the transactions contemplated hereby."

87.     None of these representations, warranties and covenants were true or accurate.

88.     Flowerdale did not, in fact, own all three tracts of the Texas Property.

27

89.     Zuchaer and Z&Z LLC knew the representations and warranties in the Flowerdale Assignment were false because Zuchaer's spouse's entity, GPS Credit, transferred Tract 3 to TJ Management earlier in 2017.

90.     Zuchaer and Z&Z LLC also knew that Yehuda had a claim to the membership interests in Flowerdale.

91.     Thus, Z&Z LLC and Zuchaer breached their obligations under the Flowerdale Assignment.

92.     Project Verte was damaged as a result of the breaches of the Flowerdale Assignment by Z&Z LLC and Zuchaer in an amount to be proven at trial.

WHEREFORE, Project Verte demands Judgment against the Counterclaim Defendants as follows:

a.     Rescinding the Flowerdale Assignment, and the other agreements contingent or dependent upon the consummation of the Flowerdale Assignment, including, but not limited to the Promissory Note to Z&Z LLC, and the $10 million "credit" to Kahlon and TNJ.

b.     Awarding Project Verte damages in an amount to be determined at trial, including damages for the difference between the value of the property that was transferred and the $14 million paid by Project Verte, in addition to punitive damages for the Counterclaim Defendants' fraud.

c.     Awarding Project Verte damages for Z&Z LLC and Zuchaer's breach of the Flowerdale Assignment.

d.     Awarding Project Verte its reasonable attorneys' fees and expenses.

e.      Awarding Project Verte pre-judgment and post-judgment interest on any

monetary award.

f.      Awarding Project Verte such other and further relief as this Court deems just,

equitable and proper under the circumstances.

## <u>DEMAND FOR A JURY TRIAL</u>

Project Verte demands a trial by jury for all counterclaims triable to a jury.

Dated: New York, New York
      January 11, 2021

                      SIMON•LESSER PC

                      By: _____
                              Leonard F. Lesser, Esq.
                              Meghan Hallinan, Esq.
                      355 Lexington Avenue, 10th Floor
                      New York, New York 10017
                      t: 212.599.5455
                      f: 212.599.5459

                      *Attorneys for Defendant and Counterclaim Plaintiff*
                      *Project Verte*