```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PROJECT VERTE, INC.,                :
                                    :
     Counterclaim-Plaintiff,        :
                                    :      20 Civ. 8703 (VM)
     - against -                    :
                                    :
ZUCHAER & ZUCHAER CONSULTING, LLC,  :
MOSHE ZUCHAER, JOSSEF KAHLON, and   :
TNJ HOLDINGS, INC.,                 :      DECISION AND ORDER
                                    :
     Counterclaim-Defendants.       :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Counterclaim-Plaintiff Project Verte, Inc. ("Project Verte") brings counterclaims against Zuchaer & Zuchaer Consulting, LLC ("Z&Z"), Moshe Zuchaer ("Zuchaer"), Jossef Kahlon ("Kahlon"), and TNJ Holdings, Inc. ("TNJ," and collectively with Z&Z, Zuchaer, and Kahlon, "Defendants") alleging fraud and breach of contract stemming from a failed land transaction. (See "Counterclaims," Dkt No. 13.)

Now before the Court is Z&Z and Zuchaer's premotion letter for dismissal of the Counterclaims (see "Motion," Dkt. No. 24), which the Court construes as a motion to dismiss the Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] Upon review of the parties' correspondence regarding the Motion, and for the reasons

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

1

discussed below, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

A. FACTUAL BACKGROUND[2]

Project Verte is a Delaware Corporation founded by initial stockholders Jane Gol ("Gol"), Amir Chaluts ("Chaluts"), various entities associated with Gol and Chaluts (the "AJ Group"), and TNJ – an entity purportedly owned by Kahlon's son, Julian Kahlon. In 2020, Julian Kahlon informed Gol and Chaluts that he had transferred 100 percent ownership of TNJ to his father, Kahlon. Project Verte was founded for the purpose of combining Gol's and Chaluts's business experience with Kahlon's land in order to purchase warehouses for ecommerce ventures. The "rough outline" of the business agreement was that Kahlon would contribute his land in Texas to construct a warehousing and logistics center, Gol and Chaluts would contribute their business experience, and all three would contribute funding to the company as necessary and on a *pro rata* basis.

---

[2] The factual background below, except as otherwise noted, derives from the SAC and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the SAC or the documents referred to therein.

On December 11, 2017, the company was officially formed and incorporated in Delaware. At that time, however, the parties had not yet finalized the company's operating agreements, but rather agreed to begin operating Project Verte on an informal basis. In August of 2018, the negotiation of the operating agreements concluded and several documents were executed, including the Assignment of Membership Interests in Flowerdale LLC (the "Flowerdale Assignment").

Project Verte alleges that Kahlon, prior to the execution of the Flowerdale Assignment, on behalf of himself and TNJ, made representations that he -- or entities he controlled -- owned the property identified in the Flowerdale Assignment (the "Texas Property"), and had authority to sell or transfer the Texas Property to Project Verte on terms Kahlon dictated. The Texas Property consisted of three tracts of land, including the tract located at 3450 E. Ledbetter Drive in Dallas Texas ("Tract 3").

Subsequently, Kahlon backtracked on these representations, and clarified that the Texas Property was controlled by both him (through a Kahlon-controlled entity Flowerdale LLC ("Flowerdale")) and his business partner Zuchaer (through Z&Z). Nevertheless, Kahlon represented he would arrange for Zuchaer to assign his ownership interest in the Texas Property to Project Verte.

3

The Flowerdale Assignment was executed by Zuchaer on behalf of Z&Z, which had the apparent effect of assigning all extant ownership interests in the Texas Property to Project Verte, in exchange for a Promissory Note in the amount of $4 million. Zuchaer and Z&Z represented that Z&Z was "the sole legal and beneficial owner[] of the [Flowerdale] interests" and had "good title to [them]" and "full power and authority to transfer [them]" and "consummate the transactions contemplated hereby." (Counterclaims ¶ 26.)

Although the promissory note given to Zuchaer and Z&Z was in the amount of $4 million, Kahlon represented that the Texas Property's actual value was in excess of $14 million. Accordingly, the parties negotiated for TNJ to receive a $10 million credit in the form of a note from Project Verte. At first, that $10 million was split between TNJ ($8 million) and the AJ Group ($2 million). But subsequently the AJ Group, not understanding why it would receive any proceeds from the transaction, divested its ownership interest in the $2 million note and transferred it to TNJ.

After the Flowerdale Assignment and the various other operating agreements were finalized, Project Verte began to uncover multiple irregularities with the Texas Property. In fall of 2019, for example, Project Verte sought a bank loan to be secured by the Texas Property. As part of the due

4

diligence process, the lender conducted an independent appraisal which concluded that the Texas Property was worth only $900,000. Further, the due diligence uncovered that Flowerdale had not owned the Tract 3 portion of the Texas Property since 2007.

Upon receiving this information, Project Verte began investigating the ownership of Tract 3. Project Verte found that Flowerdale had transferred ownership of Tract 3 to TJ Management in 2007. Ted Flomenhaft ("Flomenhaft") executed the deed on behalf of Capital TT as the sole member of Flowerdale. Kahlon executed the deed on behalf of TJ Management. On September 9, 2016, TJ Management transferred Tract 3 to GPS Credit in exchange for $10. GPS Credit is purportedly owned by Monique Law, Zuchaer's spouse. On January 18, 2017, GPS Credit transferred Tract 3 back to TJ Management for $10. TJ Management, as opposed to Flowerdale, retained ownership interest in Tract 3 at the time the Flowerdale Assignment was executed.

Further, on April 23, 2020, Project Verte received notice from third-party Avi Yehuda ("Yehuda") stating that he retained one-third ownership and 50 percent voting interest in Z&Z and had not consented or authorized the transfer of Z&Z's Flowerdale interest. Similarly, Yehuda represented that he retained a 50 percent interest in TJ Management and never

5

consented or authorized the conveyance of Tract 3 to Project Verte.

Finally, with respect to the value of the Tract 3 property, Project Verte alleges Kahlon misrepresented its value as zoned at the time the Flowerdale Assignment was executed ($900,000 versus $7 million). Project Verte further alleges that Kahlon misrepresented the Texas Property's value if it were to be rezoned for industrial use ($6 million versus $14 million). And, Project Verte alleges Kahlon misrepresented the likelihood that the Texas Property could be rezoned for industrial use. On December 13, 2018, the Dallas City Plan Commission denied the application to rezone the property, and raised a number of apparently unsolvable issues that would permanently prevent its rezoning.

B.    PROCEDURAL BACKGROUND

Given these issues associated with the Texas Property, Project Verte made no payments on the $4 million Promissory Note due to Z&Z. On October 19, 2020, Z&Z filed the instant suit against Project Verte for breach of contract based on Project Verte's non-payment. (See "Complaint," Dkt. No. 1.) On January 11, 2021, Project Verte answered the Complaint and brought the present Counterclaims against Z&Z, also naming Zuchaer, Kahlon, and TNJ as Counterclaim-Defendants. (See

Counterclaims.) Kahlon and TNJ answered the Counterclaims on April 12, 2021. (See Dkt. No. 25.)

Pursuant to the Court's Individual Practices, Z&Z and Zuchaer, by letter dated March 3, 2021, notified Project Verte of its intention to move to dismiss Project Verte's Counterclaims based on alleged deficiencies contained therein. (See Dkt. No. 22). Project Verte responded by letter dated March 10, 2021. (See "Opposition," Dkt. No. 23.) Z&Z and Zuchaer subsequently moved the Court for a premotion conference to obtain guidance on its anticipated motion to dismiss the Counterclaims. (See Motion.) The Court declined to hold a conference, and informed the parties it was prepared to rule on the motion so-deemed on the basis of the parties' correspondence. (See Dkt. No. 26.)

C. THE PARTIES' ARGUMENTS

Z&Z and Zuchaer argue that: (1) there is no personal jurisdiction over Zuchaer given his Florida residency and that Z&Z's initiation of suit in New York does not extend jurisdiction over him; (2) the fraud claims should be dismissed as duplicative of the breach of contract claims, because there is no justifiable reliance, and they are not pled with particularity as required by Rule 9(b); and (3) the breach of contract claim should be dismissed as to Z&Z because

Project Verte has not identified a provision of the Flowerdale Assignment which was breached.[3]

Project Verte responds that: (1) there is personal jurisdiction over Zuchaer because the Promissory Note was procured through Zuchaer's misrepresentations and then executed in New York; (2) the fraud claims are adequately pled because Zuchaer and Z&Z fraudulently induced Project Verte to enter the Flowerdale Assignment and therefore is not duplicative of the breach of contract claim; and (3) the breach of contract claim is adequately pled because Z&Z breached its warranty that it was "the sole legal and beneficial owner" of Flowerdale.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual

---

[3] Project Verte agreed to withdraw its breach of contract claim against Zuchaer, individually.

allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Upon review of the parties' submissions, the Court grants the Motion in part and denies it in part. The Court is persuaded that Project Verte's fraud counterclaims should be dismissed as to both Z&Z and Zuchaer and therefore Zuchaer is properly dismissed from this action. However, the Court

concludes that the breach of contract claim survives the Motion.

A. <u>FRAUD</u>

To prove fraud under New York law, "a plaintiff must show that (1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." <u>Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank</u>, 57 F.3d 146, 153 (2d Cir. 1995). Z&Z and Zuchaer make three arguments in support of dismissal of the fraud claims.

First, Z&Z and Zuchaer argue that the fraud counterclaims are duplicative of Project Verte's breach of contract claim. "[A] a contract claim cannot be converted into a fraud claim by the addition of an allegation that the promisor intended not to perform when he made the promise." <u>Papa's-June Music, Inc. v. McLean</u>, 921 F. Supp. 1154, 1160-61 (S.D.N.Y. 1996). To sustain both fraud and contract claims premised on similar or the same transaction, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by

10

the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996).

Here, Project Verte argues that it was induced to enter into the transaction because Defendants misrepresented material facts regarding the Texas Property's ownership and value. (See Opposition at 3.) These facts do not constitute promises to perform under the contract, promises which were later allegedly broken. Rather, these statements comprise alleged false representations describing factual matters extraneous to the contract itself. Thus, the Court is satisfied that fraud claims premised on these misrepresentations are not duplicative of the breach of contract claim. See, e.g., Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 502 N.E.2d 1003, 1004 (N.Y. 1986) (holding claims not duplicative when the misrepresentations "of present fact, not of future intent" were collateral to the contract).

Next, Z&Z and Zuchaer argue that Project Verte's fraud counterclaims should be dismissed because Project Verte cannot demonstrate justifiable reliance. "[T]he asserted reliance must be found to be justifiable under all the circumstances before a complaint can be found to state a cause of action in fraud." Granite Partners, LP v. Bear, Stearns &

11

Co., 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999). "Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1542 (2d Cir. 1997).

First, as to the issue of the property's value, the Court concludes that there can be no justifiable reliance as a matter of law. Project Verte, a sophisticated party, could have easily performed an independent appraisal of the property before agreeing to purchase the Texas Property for $14 million. Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 737 (2d Cir. 1984) ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."). Further, the zoning issue was known to both parties before the consummation of the transaction, and Project Verte could have exercised due diligence with respect to the likelihood of rezoning. See Tansman v. La Pietra, 8 A.D.3d 706, 708 (App Div. 2004) (finding no justifiable reliance when an issue was known to

the plaintiffs and they chose not to investigate further). Instead of performing this reasonable due diligence, Project Verte put their faith on Defendants. While such faith may have been misguided, it does not create justifiable reliance as to the value of the property. See Stuart Silver Assoc. v. Baco Dev. Corp., 245 A.D.2d 96, 99 (App Div. 1997) ("Plaintiffs were relatively sophisticated investors who should have understood the risks of investing in a real estate venture without conducting a 'due diligence' investigation or consulting their lawyers and accountants.").

Second, the Court reaches the same conclusion with respect to the property ownership issue. Project Verte's own counterclaims demonstrate that, had it performed reasonable due diligence prior to consummating the transaction, it could have discovered the ownership issues that form the basis of their claim. (See Counterclaims ¶¶ 35-42.) Project Verte's allegations stem from review of the public records on the Texas land management website. Because that information was publicly available to Project Verte prior to entering the transaction, the Court concludes that any reliance by Project Verte on the alleged misrepresentations would not be reasonable. See Stuart Silver, 245 A.D.2d at 99.

Accordingly, the Court hereby dismisses Project Verte's fraud counterclaims (Counts I and II) against Z&Z and Zuchaer.[4]

B.  BREACH OF CONTRACT

Finally, Z&Z argues that Project Verte's breach of contract claim should be dismissed because Project Verte has failed to identify an operative clause of the Flowerdale Assignment that has been breached. Upon review of the Flowerdale Assignment, the Court concludes that dismissal of this Count at this stage of the litigation would be premature. The Flowerdale Assignment states the Flowerdale was the "fee owner" of Tract 3, and that the Assignment was being executed "in consideration of the land located at approximately 3200 Stage Rd., Dallas, Texas, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follow." (See Flowerdale Assignment, Dkt. No. 13-1, at 1.) The allegations clearly raise a factual question as to whether Z&Z was the "fee owner" of Tract 3. The Court is persuaded that this statement is sufficient to support a plausible breach of contract claim at this time.

**IV.  ORDER**

---

[4] Because Zuchaer was subject only to the fraud claims, the dismissal of those claims removes him as a party from this action. Accordingly, the Court need not address Zuchaer's arguments with respect to personal jurisdiction.

For the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Moshe Zuchaer ("Zuchaer") and Zuchaer & Zuchaer Consulting, LLC ("Z&Z") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (see Dkt. No. 24) is **GRANTED IN PART** and **DENIED IN PART** as set forth above. In particular, Counts I and II are **DISMISSED** without prejudice but Count III remains to be resolved.

**SO ORDERED.**

Dated: New York, New York
        08 July 2021

_____
Victor Marrero
U.S.D.J.